### 12234. MOATE *v.* GRISWOLD.

A waiver of the right to recover in trover was shown by the plaintiff's testimony, from which it appeared that he accepted from the defendant a commission on the sale of the electric-light plant in question and accepted the defendant's promise to give to him another electric-light plant in lieu of that one.

Under the facts of the case, a nonsuit was properly awarded.

DECIDED MAY 11, 1921.

Trover; from Bibb superior court — Judge Malcolm D. Jones. January 12, 1921.

Application for certiorari was denied by the Supreme Court.

L. B. Moate brought trover against H. G. Griswold for one Alamo electric-light plant, and the case came to this court upon exceptions to the grant of a nonsuit. The evidence of the plaintiff (the only witness introduced) is substantially as follows: He had bought the exclusive right from the W. J. Dabney Implement Company, of Atlanta, Georgia, distributors of the Alamo electric-light plant, to sell these plants in Hancock county, Georgia. L. M. Rhodes, agent for the Griswold Supply Company, of Macon,

Georgia, came to Hancock county for the purpose of selling one of these plants, and through the joint efforts of the plaintiff and Rhodes one Hussey, a resident of Hancock county, was persuaded to purchase a plant. At the time of this sale the plaintiff had in his store one of these plants. Shortly after taking Hussey's order for a plant it became necessary for the plaintiff to go to Texas, and on his way he stopped over in Macon, where he and Rhodes had a talk and Rhodes said, if Hussey "gets in a hurry for a plant, we had better get your plant," and he replied that if Rhodes "would go over there and get it and pay for it, he could go over there and install it." While the plaintiff was in Texas Rhodes went to the plaintiff's place of business, obtained the plant, and delivered it to Hussey, but failed to pay for it. Upon his return from Texas he found that this was the status of affairs, and he at once went to see Griswold and demanded his commissions on the sale. Griswold at first refused to pay him a commission, but, after considerable negotiations, he and Griswold agreed upon a settlement, whereby Griswold agreed to pay him $54, one half of the commissions for the sale of the plant, and to ship to him that afternoon another plant in place of the one taken by Rhodes and delivered to Hussey. Griswold gave him a check, signed by the Griswold Supply Company, for the $54, but failed and refused, notwithstanding several demands, to ship another plant to him in lieu of the one taken by Rhodes. The plaintiff cashed the check and got the money, but credited Griswold with the amount thereof. It was in February, 1920, that he agreed to accept the check and another plant in settlement of his claim against Griswold. Afterwards the Griswold Supply Company went into bankruptcy, and he came to Macon and investigated that. He had returned from Texas about the 20th of November, 1919, when he learned that his plant had been taken by Rhodes. He never received any notice as a creditor of the Griswold Supply Company in bankruptcy, and never filed any claim in the bankruptcy proceedings. He filed his petition in trover after the Griswold Supply Company went into bankruptcy.

*Oliver C. Hancock,* for plaintiff.

*Harris, Harris & Witman,* for defendant.

BROYLES, C. J. (After stating the foregoing facts.) The plaintiff, upon discovering that Rhodes had taken the plant without

paying for it, had the option of either affirming or disaffirming this act. We think the plaintiff's evidence clearly shows that he affirmed the act, thereby waiving the conversion and divesting himself of title. He demanded and accepted his part of the commissions on the sale of the plant, for which he now sues, and likewise accepted the defendant's promise to ship to him another plant in place of the one taken. Thus the plaintiff waived the tortious taking of the plant, and so ratified the conversion as to prevent a recovery in trover. See *Bullard* v. *Bank of Madison,* 107 *Ga.* 772 (33 S. E. 684), where it was held, that, "Where a planter sold cotton ' on cash sale,' and the purchaser, without paying for the same, sold it to another, and the planter, with full knowledge of such conversion, took from the person to whom he had sold the cotton for cash his note covering the value of the cotton converted, this was such an abandonment of the cash sale, and such a ratification of the disposition which had been made of the cotton, as released the original purchaser and all who claimed under him from liability for any conversion of which they may have been guilty." See also, in this connection, 38 Cyc. 2042; 26 R. C. L. 1144. The agreement of the plaintiff, with full knowledge that the defendant had converted the plant to his own use, to accept his half of the commissions on the sale and the defendant's promise to give him another plant in place of the plant wrongfully taken, amounted to an abandonment of his right to sue in tort, and was equivalent to a sale on credit to the defendant, passing the title to him and, through him, to all who held under him. See, in this connection, *Southern Ry. Co.* v. *Kinchen,* 103 *Ga.* 186 (29 S. E. 816).

It follows from what has been said (conceding, but not deciding, that the suit was properly brought against H. G. Griswold individually) that there was no error in granting the nonsuit.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*